**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

South Carolina Department of Social Services,
Respondent,

v.

Morgan Thacker, Nathaniel Green, and John Doe,
Defendants,

Of whom Nathaniel Green is the Appellant.

In the interest of a minor under the age of eighteen.

Appellate Case No. 2024-001904

———————

Appeal From Greenville County
Rochelle Y. Conits, Family Court Judge

———————

Unpublished Opinion No. 2025-UP-312
Heard August 20, 2025 – Filed September 8, 2025

———————

**AFFIRMED**

———————

Melinda Inman Butler, of The Butler Law Firm, of
Union, for Appellant.

Amanda Stiles, of South Carolina Department of Social
Services, of Greenville, for Respondent.

Megan Goodwin Burke, of Greenville, for the Guardian ad Litem.

_____

**WILLIAMS, C.J.:** Nathaniel Green (Father) appeals a family court order terminating his parental rights to his minor child (Child). On appeal, Father argues the family court (1) violated his right to due process by compelling him to testify at the final hearing and (2) erred in terminating his parental rights on three statutory grounds. We affirm.

"On appeal from the family court, the appellate court reviews factual and legal issues de novo." *Klein v. Barrett*, 427 S.C. 74, 79, 828 S.E.2d 773, 776 (Ct. App. 2019). Under the de novo standard of review, this court may make its own findings of fact; however, we continue to recognize the superior position of the family court to assess witness credibility. *Stoney v. Stoney*, 422 S.C. 593, 595, 813 S.E.2d 486, 487 (2018). Moreover, de novo review does not relieve the appellant of the burden of showing that the preponderance of the evidence is against the family court's findings. *Id.*

We hold the family court did not abuse its discretion in overruling Father's objection to testifying in the case in chief of the Department of Social Services (DSS). *See id.* at 594 n.2, 813 S.E.2d at 486 n.2 (explaining appellate courts review the family court's procedural and evidentiary rulings for an abuse of the family court's discretion). During the combined removal and termination of parental rights (TPR) hearing, Father objected to being called to testify on due process grounds. We are unable to identify any authority suggesting this state has recognized the right to avoid testifying as falling under the ambit of due process. *See S.C. Dep't of Soc. Servs. v. Beeks*, 325 S.C. 243, 246, 481 S.E.2d 703, 705 (1997) ("The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner."). Accordingly, we hold the family court did not abuse its discretion in overruling Father's objection.

As to the statutory grounds for TPR, we hold clear and convincing evidence showed Father failed to remedy the conditions that caused Child's removal. *See* S.C. Code Ann. § 63-7-2570 (Supp. 2024) (explaining the family court may order TPR upon finding a statutory ground for TPR is met and TPR is in the child's best interest); S.C. Code Ann. § 63-7-2620 (2010) ("This article must be liberally construed in order to ensure prompt judicial procedures for freeing minor children from the custody and control of their parents by terminating the parent-child relationship."); *S.C. Dep't of Soc. Servs. v. Parker*, 336 S.C. 248, 254, 519 S.E.2d

351, 354 (Ct. App. 1999) (holding the grounds for TPR must be proved by clear and convincing evidence); *Loe v. Mother, Father, & Berkeley Cnty. Dep't of Soc. Servs.*, 382 S.C. 457, 465, 675 S.E.2d 807, 811 (Ct. App. 2009) ("Clear and convincing evidence is that degree of proof which will produce in the mind of the trier of facts a firm belief as to the allegations sought to be established." (quoting *Anonymous (M–156–90) v. State Bd. of Med. Exam'rs*, 329 S.C. 371, 374 n.2, 496 S.E.2d 17, 18 n.2 (1998))); § 63-7-2570(2) (explaining a statutory ground for TPR is met when "[t]he child has been removed from the parent . . . and has been out of the home for a period of six months following the adoption of a placement plan by court order or by agreement between [DSS] and the parent and the parent has not remedied the conditions which caused the removal"). Child was first removed in November 2022, when Morgan Thacker (Mother) was arrested for drug possession and Father, who was incarcerated, was unable to assume care of Child. In the 2022 case, the family court found Father physically neglected Child and placed her at a substantial risk of physical abuse, ordered Father's name to be entered into the Central Registry of Child Abuse and Neglect, and directed Father to complete a placement plan. Mother completed a placement plan; Father, who remained incarcerated, did not, and in October 2023, the case closed with Mother regaining custody of Child. The present action began in February 2024, when Child nearly died after ingesting fentanyl. Throughout the case, Father remained incarcerated[1] and, therefore, unable to care for Child. Accordingly, we hold this statutory ground was met.

We hold clear and convincing evidence also showed Father had a diagnosable condition that was unlikely to change within a reasonable time and made him unlikely to provide minimally acceptable care of Child. *See* § 63-7-2570(6) (explaining a statutory ground has been met when "(i) the parent has a diagnosable condition unlikely to change within a reasonable time including, but not limited to, addiction to alcohol or illegal drugs or prescription medication abuse; and (ii) the condition makes the parent unlikely to provide minimally acceptable care of the child"); § 63-7-2570(6)(b) ("It is presumed that the parent's condition is unlikely to change within a reasonable time upon proof that the parent has been required by [DSS] or the family court to participate in a treatment program for alcohol or drug addiction, and the parent has failed two or more times to complete the program successfully or has refused at two or more separate meetings with [DSS] to participate in a treatment program."). Father admitted to a decades-long history of drug use—primarily methamphetamine—and stated he had twice sought substance

---

[1] The record indicates Father was convicted of trafficking methamphetamine, second-degree burglary, and resisting an officer.

abuse treatment "on [his] own accord," which he failed to complete. Father asserted he had faced no problems with drug or alcohol since he became incarcerated, and he believed he "[had his] drug problem under control." He testified, however, that he had arranged to attend a ten-month rehabilitation program following his scheduled May 2025 release. Moreover, one of Mother's witnesses, a bail bondsman who had known Mother and Father for at least six years, described witnessing Father's "rollercoaster of sobriety." She further testified she believed Father was using drugs at the time he went to prison. Based on Father's admitted "drug problem," his extensive history of drug use, and the lack of evidence showing an ability to maintain sobriety outside his incarceration, we find this ground was met.[2]

Finally, we find TPR is in Child's best interest.[3] *See* S.C. Code Ann. § 63-7-2510 (2010) (describing the purpose of the TPR statute as "to establish procedures for the reasonable and compassionate termination of parental rights where children are abused, neglected, or abandoned in order to protect the health and welfare of these children and make them eligible for adoption by persons who will provide a suitable home environment and the love and care necessary for a happy, healthful, and productive life"); *S.C. Dep't of Soc. Servs. v. Smith*, 343 S.C. 129, 133, 538 S.E.2d 285, 287 (Ct. App. 2000) ("In a [TPR] case, the best interests of the children are the paramount consideration."); *S.C. Dep't of Soc. Servs. v. Sarah W.*, 402 S.C. 324, 343, 741 S.E.2d 739, 749-50 (2013) ("Appellate courts must consider the child's perspective, and not the parent's, as the primary concern when determining whether TPR is appropriate."); § 63-7-2620 ("The interests of the child shall prevail if the child's interest and the parental rights conflict."). The guardian ad litem (GAL), who had served as the same role in the 2022 case, described Child as a "sweet" two-year-old who "adore[d] her foster family." She testified Child's foster family, with whom Child had also been placed in the 2022 case, wanted to adopt her. The GAL remained "absolutely" concerned about

---

[2] Because we find DSS proved the two aforementioned statutory grounds by clear and convincing evidence, we need not consider whether Father willfully failed to support Child. *See S.C. Dep't of Soc. Servs. v. Headden*, 354 S.C. 602, 613, 582 S.E.2d 419, 425 (2003) (declining to address a statutory ground for TPR after concluding clear and convincing evidence supported another statutory ground).

[3] Father did not raise this issue on appeal; however, we address this issue because Child's best interests are directly implicated. *See Ex parte Roper*, 254 S.C. 558, 563, 176 S.E.2d 175, 177 (1970) ("[W]here the rights and best interests of a minor child are concerned, the [appellate] court may appropriately raise, ex mero motu, issues not raised by the parties.").

Father's ability to maintain sobriety upon his release from prison and knew of no barriers to adoption for Child. Thus, based on Child's need for permanency and the unlikelihood Father can provide a stable home for her in the foreseeable future, we find TPR is in Child's best interest.

**AFFIRMED.**

**TURNER, J., concurs.**

**GEATHERS, J., concurring in part, dissenting in part:**

I concur with the majority's conclusion that the family court did not abuse its discretion in overruling Father's objection to testifying. However, I respectfully depart from those parts of the majority's decision concerning the statutory grounds for TPR.

First, I cannot agree there was clear and convincing evidence showing Father failed to remedy the conditions that caused Child's removal. *See* S.C. Code Ann. § 63-7-2570(2) (Supp. 2024) (explaining a statutory ground for TPR is met when "[t]he child has been removed from the parent . . . and has been out of the home for a period of six months following the adoption of a placement plan by court order or by agreement between [DSS] and the parent and the parent has not remedied the conditions which caused the removal"). Although Father failed to complete the court-ordered placement plan in *the 2022 removal action*, he testified his incarceration prevented him from doing so. The 2022 removal action, however, *closed* in October 2023. The *present* case—a removal action and TPR action that were heard together—began in February 2024.[4] Father was not court ordered to complete a placement plan as part of the present action, and no evidence suggests he agreed to complete a plan during its pendency. Moreover, the record suggests Father's failure to remedy was due to his incarceration, which alone is not sufficient grounds for TPR. *See S.C. Dep't of Soc. Servs. v. Ledford*, 357 S.C. 371, 376, 593 S.E.2d 175, 177 (Ct. App. 2004) ("[I]ncarceration alone is insufficient to justify [TPR]."); *S.C. Dep't of Soc. Servs. v. Wilson*, 344 S.C. 332, 340, 543 S.E.2d 580, 584 (Ct. App. 2001) ("Terminating the parental rights of an incarcerated parent requires consideration of all of the surrounding facts and circumstances . . . . The voluntary pursuit of lawless behavior is one factor which may be considered, but

---

[4] I reiterate that Father was incarcerated when Child ingested Fentanyl and has been incarcerated throughout the entirety of the resultant removal action and simultaneous TPR action.

generally is not determinative."). Accordingly, I would find this statutory ground was not met.

Second, I cannot agree that clear and convincing evidence showed Father has a diagnosable condition unlikely to change. *See* S.C. Code Ann. § 63-7-2570(6)(a) (Supp. 2024) (explaining a statutory ground has been met when "(i) the parent has a diagnosable condition unlikely to change within a reasonable time including, but not limited to, addiction to alcohol or illegal drugs or prescription medication abuse; and (ii) the condition makes the parent unlikely to provide minimally acceptable care of the child"); § 63-7-2570(6)(b) ("It is presumed that the parent's condition is unlikely to change within a reasonable time upon proof that the parent has been required by [DSS] or the family court to participate in a treatment program for alcohol or drug addiction, and the parent has failed two or more times to complete the program successfully or has refused at two or more separate meetings with [DSS] to participate in a treatment program."). I acknowledge Father admitted to an extensive history of drug use and had not successfully completed substance use treatment by the time he was incarcerated. Additionally, in the 2022 removal action, the family court found Father and Mother physically neglected Child and placed her at a substantial risk of physical abuse, and these findings appear to have been based on both parents' drug use and inability to provide a drug-free home for Child. However, DSS presented no evidence to show Father had been diagnosed with a condition related to his substance use[5] or to refute Father's testimony that he addressed his drug problem while incarcerated.[6] Thus, the "full picture" of Father's drug addiction is unclear based on the evidence in the record. *See S.C. Dep't of Soc. Servs. v. Cochran*, 356 S.C. 413, 417–18, 589 S.E.2d 753, 755 (2003) (noting the central issue was whether mother's drug addiction was "so enduring that she [could not] parent her child" and finding the "full picture of mother's drug addiction [was] unclear" because DSS did not establish a proper chain of custody for mother's blood samples used for drug testing). Accordingly, I would find DSS has not carried its burden to show by

---

[5] I would find the presumption contemplated under section 63-7-2570(6)(b) concerns whether the parent's condition is unlikely to change, not whether the condition exists. In any event, Father testified he sought substance use treatment twice on his own and did not complete it, but there was no evidence he failed two or more times to complete treatment programs required by DSS or the family court.

[6] Father testified he arranged to attend a 10-month rehabilitation program following his release "so [he could] be better, stable, more suitable and better prepared . . . for success in sobriety and in life." The majority seems to reference this as evidence that Father still has a drug problem; however, I view this testimony as evidence of Father's intent and effort to maintain sobriety following his incarceration.

clear and convincing evidence that Father has a diagnosable condition unlikely to change.

For these reasons, I would reverse the termination of Father's parental rights because clear and convincing evidence did not support any statutory TPR ground.[7] *S.C. Dep't of Soc. Servs. v. Roe*, 371 S.C. 450, 455, 639 S.E.2d 165, 168 (Ct. App. 2006) ("Because terminating the legal relationship between natural parents and a child is one of the most difficult issues an appellate court has to decide, great caution must be exercised in reviewing termination proceedings and termination is proper only when the evidence clearly and convincingly mandates such a result.").

---

[7] While not reached by the majority, I also would find clear and convincing evidence did not show Father willfully failed to support Child. As such, I would hold no statutory ground for TPR has been met. I do not discuss the child's best interest because the statute requires a statutory ground be met before the court can reach the best interest of the child. § 63-7-2570 (the family court may order TPR upon finding a statutory ground for TPR is met and TPR is in the child's best interest); *Loe v. Mother, Father & Berkeley Cnty. Dep't of Soc. Servs.*, 382 S.C. 457, 471, 675 S.E.2d 807, 815 (Ct. App. 2009) (noting "the fundamental right of a fit parent to raise his or her child must be vigorously protected" and this court need not consider whether terminating parental rights would be in the child's best interest if no statutory ground supports termination).