# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* T.J.B. and D.J.B., Minors.

UNPUBLISHED
December 22, 2016

No. 331090
Wayne Circuit Court
Family Division
LC Nos. 15-000303-AO;
15-000304-AO

Before: MURPHY, P.J., and STEPHENS and BOONSTRA, JJ.

PER CURIAM.

Petitioner appeals by right the trial court's order dismissing her petition to adopt the minor children, TJB and DJB. We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

Petitioner signed a letter of intent to adopt TJB and DJB, her half-siblings, in June 2014, after learning that both children had been made permanent wards of the Michigan Children's Institute (MCI) upon the termination of their mother's parental rights. Petitioner was 19 years old at the time. Erin Miller, the children's adoption worker from Orchards Children's Services (Orchards), completed a preliminary adoptive family assessment and recommended that petitioner be denied consent to adopt.

On February 25, 2015, the acting MCI superintendent, Bruce Hoffman, formally denied consent to adopt. Hoffman's decision stated that he had considered the following factors when making his decision: (1) the length of time the children had lived in a stable, satisfactory environment and the desirability of maintaining continuity; (2) the willingness and ability of petitioner to assure the physical and emotional well-being of the children on a permanent basis; and (3) the psychological relationship existing between the children and petitioner. Under factor one, Hoffman found that the children's current foster parents were the only parents DJB had ever known, and that TJB had also formed an attachment with the foster family, having been placed with them for 16 months. As a result, it would not be in the children's interest to be removed from their current relative placement and placed with petitioner. Considering the second factor, Hoffman found that petitioner was not financially stable enough to provide for all of the children's needs, that her father's financial assistance could not be considered secure income, and that she was attending college full-time and working two jobs. He also reasoned that petitioner was 19 years old with no direct parenting experience, and "[i]n addition to the logistics

-1-

and possible expense of arranging for day care, [she] would have limited time to spend with the children." Finally, under factor three, Hoffman found that the children's connection with petitioner was not as strong as the connection with their current relative caregivers.

In response to Hoffman's decision, petitioner filed a motion pursuant to MCL 710.45(7), known as a "Section 45" motion, requesting that the trial court review Hoffman's decision and conclude that his denial of consent was arbitrary and capricious. The court conducted a Section 45 motion hearing on December 22, 2015. At the hearing, the trial court denied petitioner's request to have Mary Ann Bruder, the children's lawyer-guardian ad litem (L-GAL) testify.[1] However, Hoffman testified that he was aware that Bruder disagreed with the recommendation of the adoption worker, and believed that petitioner should be granted consent to adopt. The trial court upheld Hoffman's denial of consent, holding that petitioner had failed to prove, by clear and convincing evidence, that Hoffman's decision was arbitrary and capricious. In an order entered that same day, the court dismissed petitioner's adoption petition. This appeal followed.

## II. APPLICATION OF ARBITRARY AND CAPRICIOUS STANDARD

Petitioner argues that the trial court erred and misapplied the "arbitrary and capricious" standard of review by concluding that it could not review Hoffman's reasons for denying consent and could not make credibility determinations. Petitioner further asserts that because the trial court prevented petitioner from questioning witnesses to fully explore Hoffman's reasons for denying consent, the trial court erred when it concluded that petitioner had failed to prove that Hoffman's decision was arbitrary and capricious. We disagree.

Whether a trial court properly applied the "arbitrary and capricious" standard, under MCL 710.45(7), to review an MCI superintendent's decision to withhold consent to adopt, "is a question of law reviewed for clear legal error." *In re Keast*, 278 Mich App 415, 423; 750 NW2d 643 (2008), citing *Fletcher v Fletcher*, 447 Mich 871, 877; 526 NW2d 889 (1994). "When a court incorrectly chooses, interprets, or applies the law, it commits legal error that the appellate court is bound to correct." *Fletcher*, 447 Mich at 881.

The trial court's comments were that it could not review Hoffman's decision de novo or assess the correctness of Hoffman's decisions, and reflect an accurate statement of the law and the standard under MCL 710.45(7). On behalf of the state of Michigan, the MCI superintendent serves as guardian for children made permanent wards of MCI after termination of parental rights. *In re Keast*, 278 Mich App at 423, citing MCL 400.203. "Consent by the superintendent to the adoption of a state ward is required before the family court can approve a prospective adoption." *Id.*, citing MCL 710.43(1)(b). If the superintendent denies consent, the adoption petitioner may file a motion challenging the denial. *Id.*, citing MCL 710.45(2). To be

---

[1] It appears that Bruder acted as the children's L-GAL for much of the proceedings prior to the Section 45 hearing, including during the termination of their mother's parental rights, although Tracy Skinner represented the children's interests as L-GAL during the Section 45 hearing and cross-examined Hoffman.

successful, the petitioner must prove, by clear and convincing evidence, that the superintendent's decision to withhold consent was arbitrary and capricious. MCL 710.45(7); *In re Keast*, 278 Mich App at 423-424.

"[E]vidence is clear and convincing when it 'produce[s] in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established, evidence so clear, direct and weighty and convincing as to enable [the factfinder] to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue.' " *In re ASF*, 311 Mich App 420, 429; 876 NW2d 253 (2015), quoting *In re Martin*, 450 Mich 204, 227; 538 NW2d 399 (1995) (quotation marks and citation omitted) (alteration in original). "The generally accepted meaning of 'arbitrary' is 'determined by whim or caprice,' or 'arrived at through an exercise of will or caprice, without consideration or adjustment with reference to principles, circumstances, or significance, . . . decisive but unreasoned.' " *In re Keast*, 278 Mich App at 424, quoting *Goolsby v Detroit*, 419 Mich 651, 678; 358 NW2d 856 (1984) (internal quotation marks and citations omitted). Capricious means " 'apt to change suddenly; freakish; whimsical; humorsome.' " *Id*. at 424-425, quoting *Goolsby*, 419 Mich at 678 (internal quotation marks and citations omitted).

"[N]either this Court nor the circuit court reviews the matter de novo, and it is not for [this Court] to say whether the superintendent made the 'correct' decision." *In re ASF*, 311 Mich App at 436, citing *In re Keast*, 278 Mich App at 424-425, and *In re Cotton*, 208 Mich App 180, 184; 526 NW2d 601 (1994). Instead, " '[i]t is the absence of any good reason to withhold consent, rather than the presence of good reasons to grant it, that indicates that the decision maker has acted arbitrarily and capriciously.' " *Id.* at 430, quoting *In re Keast*, 278 Mich App at 424-425.

Here, the trial court correctly applied the standard of review, and did not commit clear legal error, when it concluded that petitioner had failed to prove by clear and convincing evidence that Hoffman's denial of consent was arbitrary and capricious. In his decision, Hoffman identified three factors that he considered most important to his determination: (1) the length of time the children had lived in a stable, satisfactory environment and the desirability of maintaining continuity; (2) the willingness and ability of the petitioner to assure the physical and emotional well-being of the children on a permanent basis; and (3) the psychological relationship existing between the children and the petitioner. He reasoned that DJB had lived in his current foster placement for most of his life, while TJB had lived with the same family since October 2013, and that both children had formed strong attachments to the family. Petitioner admitted that she has never lived with DJB and that they do not have a bond. Based on these facts, Hoffman believed that removal of the children from their current placement would detrimentally disrupt their development. In support of the second two factors, Hoffman reasoned that petitioner lacked any direct parenting experience, would have had limited time to spend with the children as a result of her school and work schedules, and lacked financial stability. Hoffman's decision to deny consent was not whimsical or determined by caprice.

Although petitioner argues that Hoffman based his decision on inaccurate information, she fails to identify what he information she believes to be inaccurate. At the hearing, both petitioner's counsel and Skinner questioned Hoffman regarding petitioner's request to participate in parenting classes, whether the current foster family were actually relatives, and Orchards'

supposed statement to petitioner that she would not be eligible to receive an adoption subsidy. However, it does not appear that these potential issues affected Hoffman's determination. He testified that even if petitioner had taken parenting classes, it would not have alleviated his concerns about her lack of parenting experience, and that he did not think that knowing whether the current foster parents were relatives would have affected his decision. Further, his conclusion that the children should remain in the stable environment they had lived in for a significant period of time would not have been affected by any of petitioner's claims, including that Orchards gave inaccurate information to petitioner regarding an adoption subsidy.

Finally, petitioner provides no actual argument regarding her due process and equal protection claims relative to the trial court's alleged misapplication of the arbitrary and capricious standard. She makes only conclusory statements that her due process and equal protection rights have been violated. Thus, we decline to address those claims. See *Berger v Berger*, 277 Mich App 700, 715; 747 NW2d 336 (2008).

### III. EXCLUSION OF BRUDER'S TESTIMONY

Petitioner further argues that the court erred by not allowing Bruder to testify at the Section 45 hearing. She asserts that the court committed clear legal error by foreclosing her opportunity to prove that Hoffman's denial of consent was arbitrary and capricious, and that this amounted to a violation of due process. We disagree.

A trial court's decision to admit or exclude evidence is reviewed for an abuse of discretion. *In re Utrera*, 281 Mich App 1, 15; 761 NW2d 253 (2008), citing *In re Archer*, 277 Mich App 71, 77; 744 NW2d 1 (2007). "An abuse of discretion occurs when the trial court chooses an outcome that falls 'outside the range of principled outcomes.'" *Id.*, quoting *Barnett v Hidalgo*, 478 Mich 151, 158; 732 NW2d 472 (2007). However, this Court reviews de novo evidentiary issues involving questions of law, including statutory and court rule interpretation. *Id.*

Petitioner contends that the trial court committed clear legal error when it refused to allow Bruder to testify because it foreclosed her opportunity to prove, by clear and convincing evidence, that Hoffman's decision was arbitrary and capricious. In support of its decision, the trial court cited this Court's opinion in *In re ASF*, 311 Mich App at 422. There, the minor child's L-GAL appealed the trial court's decision in a Section 45 motion hearing. *Id.* The L-GAL argued that the court should not have granted MCI's motion for involuntary dismissal because she had not been given the opportunity to present her own case before the court made its decision. *Id.* at 437-438. Although this Court ruled that an L-GAL is not an interested party in an adoption proceeding, and that an L-GAL cannot intervene as a party in proceedings under MCL 710.45, it reasoned that an L-GAL is not completely prohibited from participating in motion hearings under MCL 710.45. *Id.* at 438, 438 n 5. Instead, this Court cited MCL 710.45(5), MCL 712A.17c(9), and MCL 712A.17d, and stated, "There is support for the proposition that, when an LGAL has been appointed during child abuse and neglect proceedings, some participation by an LGAL is anticipated during ensuing adoption proceedings that occur during the LGAL's continued representation of the child. *Id.* at 438 n 5.

Although an L-GAL is permitted to participate in Section 45 hearings (as indeed Skinner did by appearing on behalf of the minor children and cross-examining Hoffman), MCL 712A.17d(3) provides: "The court or another party to the case shall not call a lawyer-guardian ad litem as a witness to testify regarding matters related to the case. The lawyer-guardian ad litem's file of the case is not discoverable." Petitioner has presented us with no authority indicating that this proscription is inapplicable to Section 45 hearings. Generally speaking, the participation of an L-GAL is contemplated by the probate code as being that of a representative of the children's best interests, not a fact witness. See, e.g., MCL 400.204(2) (stating that the L-GAL may raise objections regarding issues of commitment, placement, or permanency planning with the superintendent). Thus, the court did not abuse its discretion by refusing to allow Bruder to testify as a fact witness at the Section 45 hearing. *Utrera*, 281 Mich App at 15.

Further, petitioner fails to provide any argument regarding how Bruder's testimony may have affected the trial court's conclusion that petitioner had failed to prove, by clear and convincing evidence, that Hoffman's denial of consent was arbitrary and capricious. Bruder's testimony would not have affected Hoffman's reasoning that the children had lived in a stable and satisfactory environment with their current placement for a significant period of time, and that disruption of that environment would detrimentally affect the children. Again, " '[i]t is the absence of any good reason to withhold consent, rather than the presence of good reasons to grant it, that indicates that the decision maker has acted arbitrarily and capriciously.' " *In re ASF*, 311 Mich App at 430, quoting *In re Keast*, 278 Mich App at 424-425. Further, Hoffman testified that he was aware of Bruder's recommendation in the case, and took that recommendation into account when making his consent determination. Therefore, the court did not commit clear error by refusing to allow Bruder to testify, or by concluding that her testimony would not have affected its decision.[2]

## IV. CONSTITUTIONAL VIOLATION

Finally, petitioner argues that application of the arbitrary and capricious standard of review, as prescribed by MCL 710.45(7), to the MCI superintendent's consent decisions violates the constitutional principles of due process and equal protection. We disagree.

"The constitutionality of a statute is a question of law that this Court reviews de novo." *Brinkley v Brinkley*, 277 Mich App 23, 26; 742 NW2d 629 (2007). Both the Federal and Michigan Constitutions guarantee the right to due process of law. Const, Am V; US Const, Am XIV; Const 1963, art 1, § 17; *People v Sierb*, 456 Mich 519, 523-524; 581 NW2d 219 (1998). "A procedural due process analysis requires a dual inquiry: (1) whether a liberty or property interest exists which the state has interfered with, and (2) whether the procedures attendant upon the deprivation were constitutionally sufficient." *Hinky Dinky Supermarket, Inc v Dep't of Community Health*, 261 Mich App 604, 606; 683 NW2d 759 (2004) (quotation marks and

---

[2] Again, this Court does not separately address petitioner's claim that the court's refusal to allow Bruder to testify violated due process. She makes no specific argument in support of that claim.

citation omitted). Here, petitioner cites no authority that a sibling has a fundamental due process right to adopt another sibling. She mentions the fundamental right to parent, but she is not the minor children's parent. Thus, petitioner cannot show that application of MCL 710.45(7) violates her procedural due process rights.

"[W]hether challenged legislation violates principles of substantive due process depends on the nature of the right affected," and the rational basis test applies if the right is not fundamental. *Brinkley*, 277 Mich App at 30. Although petitioner makes reference to the fundamental right of parenthood, petitioner again has failed to cite any authority for the proposition that a sibling has a fundamental right to adopt another sibling. We therefore conclude that rational basis review applies. Petitioner has not provided any argument that the burden placed on her here is not rationally related to a legitimate governmental purpose. *Id.* And we are satisfied that placing the burden of proving arbitrariness and capriciousness on the party seeking to challenge the action of a government agency tasked with protecting children is rationally related the legitimate governmental purpose of protecting the health, safety, and welfare of those children. See *id.;* See also *In re Brock*, 442 Mich 101, 111; 499 NW2d 752 (1993).

Moreover, petitioner's equal protection claim lacks merit. Petitioner makes no argument regarding how the application of MCL 710.45(7) results in her being treated differently than someone similarly situated. See US Const, Am XIV, art 1, § 2; Const 1963, art 1, § 2; *Crego v Coleman*, 463 Mich 248, 258-259; 615 NW2d 218 (2000).

Affirmed.


/s/ William B. Murphy
/s/ Mark T. Boonstra